CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

APR 24 2018

JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| REHABCARE GROUP EAST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:17-cv-00043 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| BROC L.L.C. and BRNURSCO, LLC, | ) | By: Hon. Jackson L. Kiser |
| | ) |     Senior United States District Judge |
| Defendants. | ) | |

      This matter is before the Court on Plaintiff RehabCare Group East, Inc.'s ("RehabCare") Motion for Partial Summary Judgment ("the Motion"). Defendants BROC, LLC ("BROC") and BRNURSCO, LLC ("BRNURSCO"), collectively "Defendants," filed a brief in opposition, and RehabCare replied pursuant to the amended Pretrial Order. [ECF No. 21.] The parties submitted the matter on brief, waiving their right to oral argument before the Court. I have reviewed the briefs of the parties and the relevant evidence, and the matter is ripe for disposition. For the reasons stated herein, I will deny the Motion with respect to BROC and grant the Motion in part with respect to BRNURSCO. I find that BRNURSCO did breach an implied contract with RehabCare, entitling RehabCare to summary judgment on Count II of its Complaint.

### I.    STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

      The parties agree on the relevant facts, and dispute only the legal significance of their actions. Prior to 2015, BROC owned and operated Blue Ridge Rehab Center ("the facility"). On November 4, 2013, RehabCare and BROC entered into a Therapy Services Agreement ("the TSA"), which generally obligated RehabCare to provide therapists and therapy services to patients of the facility, and obligated BROC to pay RehabCare according to an agreed fee

schedule. [ECF No. 26-1, pgs. 117–137.]¹  Up until July of 2015, there appears to have been no issue with this arrangement.

On July 30, 2015, BROC and BRNURSCO entered into an Operations Transfer Agreement ("the OTA") in which BROC transferred its ownership and management of the facility to BRNURSCO. [ECF No. 26-1, pgs. 214–232.]

At the time the OTA was entered, none of the parties appear to have made attempts to have BRNURSCO assume the TSA. Nevertheless, RehabCare continued to provide therapy services at the facility under BRNURSCO's management. No express agreement was entered into between RehabCare and BRNURSCO. Over the next two years (August 1, 2015–July 31, 2017), RehabCare provided therapy services at the facility totaling over $2 million. According to Michael Marshall ("Marshall"), BROC and BRNURSCO's corporate representative, BRNURSCO paid for *some* of those services. Other invoices, however, went unpaid. In its answers to interrogatories, BRNURSCO asserted that it failed to pay because of improper billing to third-party payors, such as Medicare. [ECF No. 26-1, pgs. 179, 194.] At the deposition of BRNURSCO's corporate representative, Marshall admitted that BRNURSCO was indebted to RehabCare. [ECF No. 26-1, pg. 261 ("I wanted to clarify that *there is an amount indebted to the plaintiff*." (emphasis added)).]

RehabCare brought suit against BROC and BRNURSCO in this Court on June 28, 2017. (Compl. ¶¶ 2–3 [ECF No. 1].) On July 31, 2017, RehabCare informed BRNURSCO that it was terminating its services at the facility due to BRNURSCO's failure to pay. [ECF No. 26-1, pg. 251.] On March 27, 2018, RehabCare moved for summary judgment against BROC and BRNURSCO on Count I, which alleged breach of the TSA, and for summary judgment against

---

¹ Evidence is referred to by its Electronic Court Filing ("ECF") number and corresponding "pageid#" on the Court's electronic docket.

BRNURSCO on Counts II (quantum meruit) and III (unjust enrichment).  (See Mot. for Partial Summ. J., Mar. 27, 2018 [ECF No. 25].)  The matter was fully briefed by the parties, and the parties jointly waived a hearing on the Motion and submitted the matter for consideration on the briefs.  (See id.)  The matter is ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); George & Co. LLC v. Imagination Entertainment Ltd., 575 F.3d 383, 392 (4th Cir. 2009).  A genuine dispute of material fact exists "[w]here the record taken as a whole could . . . lead a rational trier of fact to find for the nonmoving party."  Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal quotation marks and citing reference omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine dispute cannot be created where there is only a scintilla of evidence favoring the nonmovant; rather, the Court must look to the quantum of proof applicable to the claim to determine whether a genuine dispute exists.  Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson, 477 U.S. at 249−50, 254.  A fact is material where it might affect the outcome of the case in light of the controlling law.  Anderson, 477 U.S. at 248.  On a motion for summary judgment, the facts are taken in the light most favorable to the non-moving party insofar as there is a genuine dispute about those facts.  Scott, 550 U.S. at 380.  At this stage, however, the Court's role is not to weigh the evidence, but simply to determine whether a genuine dispute exists making it appropriate for the case to proceed to trial.  Anderson, 477 U.S. at 249.  It has been noted that "summary judgment is particularly appropriate . . . [w]here the unresolved issues are primarily legal rather than factual" in nature.  Koehn v. Indian Hills Cmty. Coll., 371 F.3d 394, 396 (8th Cir. 2004).

## III. DISCUSSION

All parties agree that Virginia law applies. It is well-settled that a federal court, sitting in diversity, applies the choice of law provisions of the state in which it sits. See Erie E. Co. v. Tompkins, 304 U.S. 64, 78 (1938); see also Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Under Virginia's conflict of law rules, "[q]uestions concerning the validity, effect, and interpretation of a contract are resolved according to the law of the state where the contract was made." Seabulk Offshore v. Am. Home. Assur. Co., 377 F.3d 408, 419 (4th Cir. 2004) (applying Virginia law). With respect to the TSA, it states that it "shall be construed under, and governed in accordance with, the laws of the state in which Facility is located." [ECF No. 26-1 pg. 126 ¶ 7.k.] Therefore, claims asserting breach of the TSA are evaluated under Virginia law. Regarding the implied contract claims, Virginia holds that "a contract is made when its last act to complete it is performed . . . ." Metcalfe Bros., Inc. v. Am. Mut. Liab. Ins. Co., 484 F. Supp. 826, 829 (W.D. Va. 1980). Given that the implied contract claims all concern the provision of services at a Virginia-based skilled care facility, it seems apparent that the last act occurred in Virginia.

    a. Count I—Breach of Contract: Agreement as to BROC or BRNURSCO

RehabCare first moves for summary judgment on its breach of contract (the TSA) against both BROC and BRNURSCO. These two defendants must be considered separately, as only one was a signatory to the contract at issue.

"The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." Filak v. George, 594 S.E.2d 610, 614 (Va. 2004). As to BROC, there is no dispute that there was a legally enforceable agreement

between RehabCare and BROC. What is disputed, however, is whether BROC breached that agreement when it failed to pay for services rendered by RehabCare *after* the OTA took effect.

On this point, the TSA gives a clear answer: RehabCare was under no contractual obligation to provide services, and BROC was under no obligation to pay for services rendered, after the OTA took effect. By its terms, the TSA obligated RehabCare to "provide therapy services to patients of Facility . . . ." [ECF No. 26-1 pg. 117 ¶ 1.a.] "Facility" is defined as "BROC L.L.C. d/b/a Blue Ridge Rehab Center." (Id.) Once the OTA was signed, the patients at the Blue Ridge Rehab Center were *not* patients of BROC, but were patients of BRNURSCO. Accordingly, the services provided by RehabCare after August 1, 2015, were not services under the contract with BROC, and BROC did not breach the TSA when it failed to pay for services rendered to a third party. In the absence of a breach, RehabCare is not entitled to summary judgment against BROC on Count I.

As to BRNURSCO, RehabCare contends that the OTA obligated BRNURSCO to assume the TSA, and that once the OTA became operative, BRNURSCO became obligated to perform under the TSA. To this end, RehabCare points to certain provisions of the OTA, only one of which arguably applies:[2]

> Following the Closing Date, if permitted by the terms of the applicable agreement, Transferor [BROC] agree [*sic*] to promptly assign to New Operator [BRNURSCO], and New Operator shall accept and assume, any agreement related to the operation of the Facility (other than real property leases and personal property leases relating solely to the Facility) . . . .

---

[2] RehabCare points to the provision in paragraph 2.6 in support of its argument. The operative portion in that paragraph reads: "New Operator [BRNURSCO], to the extent it utilizes the services provided by third parties, shall be responsible for, and shall pay on a timely basis, any claims or charges which are due to such third parties arising from the use, operation or control of the Facility from and after the Closing Date." [ECF No. 26-1 pg. 219 ¶ 2.6.] This paragraph has nothing to do with the assumption of a contract with a third party. Rather it is standard, boilerplate language obligating BRNURSCO to pay any bills it incurs after taking over operation of the facility and absolves BROC of bills incurred after BRNURSCO took over.

[ECF No. 26-1 pg. 221 ¶ 2.16.] RehabCare is correct that this provision concerns the assumption of contracts with third parties. What it overlooks, however, is the phrase, "if permitted by the terms of the applicable agreement . . . ."

"When the terms of [a contract] are clear and definite, it is axiomatic that they are to be applied according to their ordinary meaning. Where there is no ambiguity in the terms of a contract, [the court] must construe it as written . . . ." Smith v. Smith, 351 S.E.2d 593, 595–96 (Va. Ct. App. 1986) (citing Amos v. Coffey, 320 S.E.2d 335, 337 (Va. 1984); Quillen v. Titue, 2 S.E.2d 284, 287 (Va. 1939); Potts v. Mathieson Alkali Works, 181 S.E. 521, 532 (Va. 1935)).

Turning to the TSA—the applicable agreement—it spells out how the TSA may be assigned or assumed by an entity *not* a party to the contract:

> Any such assumption of this Agreement shall be pursuant to an assignment and assumption agreement executed by the Vice President of Finance and Controller of RehabCare, a duly authorized representative of Facility, and the successor operator pursuant to which Facility assigns its rights under this Agreement to such successor operator, and such successor operator assumes Facility's obligations hereunder, in each case with respect to periods from and after the effective date of the Facility Operator Change.

[ECF No. 26-1 pg. 122 ¶ 5.c.ii.] Even if the OTA suffices as an agreement by which BROC assigned its rights under the TSA to BRNURSCO, RehabCare has failed to establish that its necessary contractual obligations—an assignment and assumption executed by RehabCare's Vice President of Finance—was completed. Absent such a showing, RehabCare has not established that BRNURSCO properly assumed the TSA, and therefore it is not entitled to summary judgment on Count I against BRNURSCO.

Moreover, the TSA states that "[n]either party may assign its rights or obligations hereunder without the prior written approval of the other; provided, however, that such an

assignment may be made to an entity which is related by virtue of a common parent corporation or which is directly or indirectly wholly owned or controlled by the same entity as the assigning party." [ECF No. 26-1 pg. 127 ¶ 7.q.] RehabCare has not offered evidence to show that BROC and BRNURSCO, despite sharing a corporate representative, have a common parent corporation. Likewise, the evidence has not established that BRNURSCO is "directly or indirectly controlled by the same entity" as BROC. Without such evidence, I cannot say that any assignment or assumption, even assuming that one took place, was valid.

It should be apparent why such contractual niceties must be followed prior to the assignment or assumption of a contract. When two parties contract with one another, they presumably know enough about the other party to agree to enter into a contractual relationship. When a third party assumes that contract, one of the original parties is forced into a contractual relationship with one to whom it may not wish to be bound. Accordingly, in such an instance, it is vital that the necessary steps, which are spelled out in the contract, be followed. Here, RehabCare agreed (in the TSA) that the contract would be assignable under certain circumstances and after specific steps were taken. Those steps do not appear to have been followed here. Had BROC attempted to assign the TSA to an entity RehabCare did not believe could satisfy its obligations, it would have been free not to enter into the necessary "assumption and agreement." By failing to do so in its dealings with BRNURSCO, RehabCare has not shown a valid assumption of the TSA by BRNURSCO. In the absence of a valid assumption, BRNURSCO was not bound by the terms of the TSA, and RehabCare is not entitled to summary judgment for breach of the TSA against BRNURSCO.

b. Count II—Implied Contract/Quantum Meruit as to BRNURSCO

In the absence of an express contract between two parties, the law will occasionally imply a contract in order to avoid the injustice of one party accepting the goods or services of another without paying for them. "Virginia distinguishes between two types of implied contracts: contracts that are implied-in-fact and contracts that are implied-in-law. An implied-in-fact contract is an actual contract that was not reduced to writing, but the court infers the existence of the contract from the conduct of the parties." Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 166 (4th Cir. 2012) (citing Nossen v. Hoy, 750 F. Supp. 740, 744 (E.D. Va. 1990)). "The quasi-contract, or contract implied-in-law, is not a contract within the generally-accepted meaning but is an equitable concept to prevent unjust enrichment. It resembles a duty to make restitution and imposes and obligation to pay even though no intention of the parties to bind themselves can be discerned." In re MBA, Inc., 51 B.R. 966, 974–75 (Bankr. E.D. Va. 1985). The breach of an implied-in-fact contract is often call "quantum meruit," whereas a breach of an implied-in-law contract is often called "unjust enrichment." Baudean v. Pearson Education, Inc., No. 3:14cv685, 2015 WL 3651199, at *8 (E.D. Va. June 11, 2015) (citing Seagram v. David's Towing & Recovery, Inc., 62 F. Supp. 3d 467, 477 (E.D. Va. 2014)). Although Defendants rightly assert that the terms "quantum meruit," "unjust enrichment," and "contract implied-in-law" are often used interchangeably, see id. at *8 n.24, "quantum meruit" and "unjust enrichment" are each "technically a distinct cause of action, [although] the desired result of both is the same—that the plaintiff who provided a benefit or service to the defendant receives compensation for that benefit or service," Seagram, 62 F. Supp. 3d at 477.

"Like an express contract, an implied-in-fact contract is created only when the typical requirements to form a contract are present, such as consideration and mutuality of assent."

Spectra-4, LLP v. Uniwest Commercial Realty, Inc., 772 S.E.2d 290, 295 (Va. 2015) (citing City of Norfolk v. Norfolk Cnty., 91 S.E. 820, 821–22 (Va. 1917)). "[A]n implied-in-fact contract 'is arrived at by a consideration of [the parties'] acts and conduct.'" Id. (quoting City of Norfolk, 91 S.E.2d at 821). "Thus, where a contract has been formed based on the parties' conduct, but nothing has been said regarding compensation, the law provides that the person who performs the services shall be paid for the reasonable value of the work performed." Seagram, 62 F. Supp. 3d at 477 (citing Mangold v. Woods, 677 S.E.2d 288, 292 (Va. 2009)).

In the present case, BRNURSCO admits that there was an implied-in-fact contract between it and RehabCare. (Defs.' Mem. in Opp. to Pl.'s Partial Mtn. for Summ. J. pg 10–11 [ECF No. 27] ("With respect to BRNURSCO, RehabCare's evidence and argument establishes a claim for breach of an implied-in-fact contract . . . .").) Accordingly, summary judgment is appropriate on Count II (Implied Contract/Quantum Meruit) as to BRNURSCO.

Strangely, despite admitting the existence and its breach of an implied-in-fact contract with RehabCare, BRNURSCO opposes summary judgment on Count II. It argues that, because there was an implied-in-fact contract between it and RehabCare, an implied-in-law contract cannot exist, and thus RehabCare is not entitled to prevail on Count II. Presumably, BRNURSCO reads the heading of Count II—"Implied Contract/Quantum Meruit"—as asserting an implied-in-law contract. But those courts that have squarely addressed the difference between the terms agree: quantum meruit is the term used to refer to the cause of action for breach of an implied-in-fact contract. Accord Baudean, 2015 WL 3651199, at *8; Seagram, 62 F. Supp. 3d at 477; Commonwealth Group-Winchester Partners, L.P. v. Winchester Warehousing, Inc., No. , 2007 WL 2570218, at *9 (W.D. Va. Aug. 31, 2007) (citing Nossen, 750 F. Supp. at 744); Campbell Cnty. v. Howard, 112 S.E. 876, 885 (Va. 1922) ("And generally, in the class of cases

involving only purely personal services, unattended with any actual transferring or tangible property, in the absence of special contract to the contrary, express or implied in fact (as distinguished from one which the law implies), the sole measure of recovery is the value of the work done, on a quantum meruit."). Thus, even granting BRNURSCO the argument that the heading on Count II is controlling, Count II plainly asserts a claim for breach of an implied-in-fact contract.[3]

Even without BRNURSCO's admission that there was an implied-in-fact contract, the evidence leads to the inexorable conclusion that: (1) there was an implied-in-fact contract between the parties; and (2) BRNURSCO breached it. Under Virginia law, the elements of a claim for quantum meruit, or breach of an implied-in-fact contract, are:

> (1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value.

EDI Precast, LLC v. Mid-Atlantic Precast, LLC, No. 3:12-cv-00012, 2012 WL 2343033, at * 3–4 (W.D. Va. June 20, 2012) (quoting MP Leasing Corp. v. Colonna's Shipyard, No. 2:07cv273, 2009 WL 2581575, at *4 (E.D. Va. May 8, 2009) (citations omitted)). If proven, a plaintiff is entitled to "the reasonable value of the work performed." Seagram, 62 F. Supp. 3d at 477 (citing Mangold v. Woods, 677 S.E.2d 288, 292 (Va. 2009)).

The facts here unmistakably establish RehabCare's claim for quantum meruit. There is no dispute that RehabCare, in providing therapy services at BRNURSCO's facility, conferred a benefit on BRNURSCO. And there is no dispute that BRNURSCO knew it was receiving services from RehabCare. Finally, it would certainly be inequitable to permit BRNURSCO to

---

[3] Even if Count II did assert the contradictory claims of breach of an implied-in-fact contract (quantum meruit) and breach of an implied-in-law contract (unjust enrichment), such contradictory pleading is expressly permitted. See Fed. R. Civ. P. 8(d).

receive over $2 million worth of services without paying for them. By failing to pay for the services it received from RehabCare, BRNURSCO breached its implied-in-fact contract with RehabCare, and RehabCare is entitled to summary judgment against BRNURSCO on Count II.

    c. Count III—Unjust Enrichment as to BRNURSCO

A claim for unjust enrichment, or breach of an implied-in-law contract, see Seagram, 62 F. Supp. 3d at 477 (citing Po River Water & Sewer Co. v. Indian Acres Club of Thornburg, Inc., 495 S.E.2d 478, 482 (Va. 1998)), does not lie where the parties' actions created an implied-in-fact contract. See Rosetta Stone, 676 F.3d at 166 ("[T]he concept of an implied-in-law contract, or quasi-contract, applies only where there is not an actual contract or meeting of the minds."); In re MBA, 51 B.R. at 974–75 ("A court properly resorts to quasi-contract only in the absence of an express contract or contract implied-in-fact, and only when it would be unfair for the recipient to keep a benefit without paying for it." (citing Bloomgarden v. Coyer, 479 F.2d 201 (D.C. Cir. 1973))). Because there was an implied-in-fact contract, RehabCare is not entitled to summary judgment against BRNURSCO on Count III.

    d. Damages

Turning to the measure of damages on Count II, BRNURSCO asserts that RehabCare has failed to establish that what it charged for its services was "reasonable." I find that argument unpersuasive. The evidence shows that the Fee Schedule in the TSA was reasonable and appropriate with RehabCare's prior customer, BROC, and that BRNURSCO took no issue with the reasonableness of RehabCare's fees when it paid some of its invoices. I find that RehabCare has proven the reasonableness of its fees.

Even if the fees were not reasonable, the implied-in-fact contract between RehabCare and BRNURSCO set the terms of the agreement between the parties, terms which included the fees.

"With implied-in-fact contracts, the parties' conduct . . . establish[es] what the terms of the contract are." Spectra-4, LLP v. Uniwest Commercial Realty, Inc., 772 S.E.2d 290, 295 (Va. 2015). Here, BRNURSCO acted in accordance with the Fee Schedule when it paid some of RehabCare's invoices. In her affidavit, Marjorie Daniels stated that BROC and BRNURSCO "requested that RehabCare continue to provide services to the Facility *as set forth in the TSA*," which included the Fee Schedule. [ECF No. 26-1 pg. 113 ¶ 3 (emphasis added).] By its actions, BRNURSCO adopted and incorporated the TSA Fee Schedule into its contract with RehabCare. Therefore, even if the fees were not reasonable, RehabCare would nevertheless be entitled to them because BRNURSCO agreed to them. Cf. Seagram, 62 F. Supp. 3d at 477 (citing Mangold v. Woods, 677 S.E.2d 288, 292 (Va. 2009)) (holding that the appropriate measure of damages is the reasonable value of the work performed *when nothing has been said between the parties regarding compensation*). RehabCare is entitled to recover the full amount it billed BRNURSCO. Based on the evidence and affidavit of Marjorie Daniels, judgment will be entered against BRNURSCO for the entire outstanding balance: $2,182,109.04.

RehabCare also seeks both pre-judgment and post-judgment interest. "[T]he award of prejudgment interest is a matter within the Court's discretion." Tattoo Art, Inc. v. TAT Int'l, LLC, 794 F. Supp. 2d 634, 663 (E.D. Va. 2011), aff'd 498 F. App'x 341 (4th Cir. 2012). Although there is evidence that BRNURSCO asked RehabCare to continue providing services under the TSA,[4] there is no evidence that BRNURSCO acquiesced to the late payment fees and

---

[4] Although BRNURSCO acted in accordance with the TSA in many respects, its actions did not establish an intent to be bound by all the terms of the TSA. "In limited circumstances, an implied-in-fact contract may encompass the totality of an express contract simply by way of the parties acting in a manner consistent with such an express contract. But it is only when the parties to an express contract continue to act as if that contract is still operative even after it expires that the entirety of 'the material terms of the prior contract . . . survive intact' by way of a subsequently formed implied-in-fact contract." Spectra-4, 772 S.E.2d at 295 (quoting Luden's Inc. v Local Union No. 6 of the Bakery, Confectionery & Tobacco Workers' Int'l Union, F28 F.3d 347, 355–56 (3rd Cir. 1994)). "[T]he logic recognized in Luden's Inc.

interest under the TSA. Pre-judgment interest at the statutory rate in Virginia, however, is appropriate given BRNURSCO's its admission that an implied-in-fact contract existed but its refusal to pay under that contract. Cf. Kenney v. Palmer-Stuart Oil Co., Inc., No. 3:17cv00053, 2017 WL 4581800, at *4 (W.D. Va. Oct. 13, 2017). Pre-judgment interest is also appropriate due to the need to make RehabCare whole. "The award of prejudgment interest is to compensate Plaintiff for the loss sustained by not receiving the amount to which he was entitled at the time he was entitled to receive it, and such award is considered necessary to place the [plaintiff] in the position he would have occupied if the party in default had fulfilled his obligated duty." Marks v. Sanzo, 345 S.E.2d 263, 267 (Va. 1986) (quoting Employer-Teamsters Joint Council No. 84, Health & Welfare Fund v. Weatherall Concrete, Inc., 468 F. Supp. 1167, 1171 (S.D.W. Va. 1979)). Accordingly, RehabCare is entitled to pre-judgment interest at a rate of six percent (6%), see Va. Code Ann. § 6.2-302 (2017), totaling at least $114,242.63, as well as post-judgment interest as set forth in 28 U.S.C. § 1961.[5]

## IV. CONCLUSION

For the foregoing reasons, BROC is not bound under the TSA to pay for services rendered to BRNUSCO, and RehabCare has failed to show that the TSA was properly assumed by BRNURSCO. Summary judgment is not appropriate on Count I. As to Count II, there was

---

applies only to those specific circumstances: when the *same parties* are engaged in the *same course of dealing* both during and after the expiration of the express contract. Absent such circumstances, an implied-in-fact contract may include only the particular terms of a previously expired express contract which the parties' subsequent actions, embodying their mutuality of assent, specifically encompass." Id. at 269 (citing Green's Ex'rs v. Smith, 131 S.E. 846, 848 (Va. 1926); City of Norfolk, 91 S.E.2d at 821–22). RehabCare has failed to show that BRNURSCO assented to the interest and late fee provisions of the TSA, therefore those terms are not part of the implied-in-fact contract between RehabCare and BRNURSCO.

[5] The prejudgment calculation is through the date of this Memorandum Opinion. Entry of judgment will be delayed fourteen (14) days to permit RehabCare to submit its request for fees and costs under Fed. R. Civ. P. 54(d), and to permit the parties to offer the court a resolution on the remaining counts of the Complaint, if necessary. Prejudgment interest will continue to accrue at the 6% rate until judgment is entered.

an implied-in-fact agreement between RehabCare and BRNURSCO, which BRNURSCO breached. Summary judgment is appropriate against BRNURSCO on Count II. Summary judgment on Count II precludes summary judgment on Count III under Virginia law. RehabCare is entitled to judgment against BRNURSCO totaling $2,182,109.04, plus pre- and post-judgment interest as set forth herein.

The parties are instructed to inform the court if a trial on this matter is necessary. If no other proceedings are necessary and if there is a request for fees or costs, such a request must be filed within fourteen (14) days from the date of this Memorandum Opinion.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 24th day of April, 2018.

                                                s/Jackson L. Kiser
                                                SENIOR UNITED STATES DISTRICT JUDGE